IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 1, 2018 Session

**IN RE ESTATE OF ELOISE J. STOREY**

**Appeal from the Probate Court for Shelby County**
**No. D0552    Kathleen N. Gomes, Judge**

_____

**No. W2017-00689-COA-R3-CV**
_____

Following eleven years of litigation, Appellant appeals the trial court's award of both attorney's fees, executor's fees, and expenses charged to the estate.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

John D. Horne, Memphis, Tennessee, for the appellant, Peggie Sherrill Huber.

George J. Nassar, Jr., and Jeremy G. Alpert, Memphis, Tennessee, for the appellees, Lawrence G. Yohanek, on behalf of the Estate of Eloise J. Storey, Sharron S. Yohanek, and John G. Storey.

**OPINION**

FACTS

This case arises from an acrimonious estate dispute spanning over eleven years in which one family member is pitted against other family members regarding the disposition of a deceased family member's estate. This is the second appeal in this case. *See **In re Estate of Storey***, No. W2010-00819-COA-R3-CV, 2011 WL 2174901, (Tenn. Ct. App. May 31, 2011). This appeal relates only to the issue of the trial court's award of attorney's and executor's fees and expenses.  Thus, given the nature of the appeal, a recitation of the case's lengthy, tumultuous procedural history is necessary.

Eloise J. Storey executed her Last Will and Testament and Durable Power of

Attorney on May 6, 1998, naming her son-in-law, Lawrence G. Yohanek, as both attorney in fact and executor of her estate. Mrs. Storey ("Decedent") died on March 4, 2006. On March 30, 2006, Mr. Yohanek filed a petition in the Probate Court of Shelby County ("trial court") to admit Decedent's Last Will and Testament to probate. The same day, the trial court entered a written order admitting the will to probate and appointing Mr. Yohanek as executor (hereinafter, "Executor"). The will made

> specific bequests to each of her three children. To [Defendant/Appellee] Mrs. Yohanek, [Decedent] bequeathed real property located in Panola County, Mississippi. To [Defendant/Appellee] Mr. John G. Storey, [Decedent] bequeathed real property in Tunica County, Mississippi, which was used as a fishing camp. To [Plaintiff/Appellant Mrs. Peggie Sherill Huber], [Decedent] bequeathed the cash sum of $150,000. The "specific bequest" section of the will included [Decedent's] comment that the distribution was her "effort at treating my children equally and I hope that they are pleased and satisfied with the division of my property."

*In re Estate of Storey*, 2011 WL 2174901, at \*2. Shortly thereafter, on July 12, 2006, Plaintiff/Appellant Peggie Sherill Huber ("Appellant") filed a petition to require Mr. Yohanek to file an accounting and to remove him as executor of the estate. Executor subsequently filed a motion to dismiss; the trial court ultimately granted the motion in December 2006 because Appellant failed to state any ground as to the removal of Executor and failed to properly plead the motion.

On September 10, 2007, Appellant filed a complaint against Executor for undue influence, breach of fiduciary duty, and/or conversion, and additionally, she sought to set aside certain transfers authorized by Executor.[1] Specifically, Appellant argued that Executor was wrongly filing gift tax returns reflecting an over $650,000 gift to Mrs. Huber in 2001. Mrs. Huber asserted that the gift was "contrived" and the gift taxes wrongly depleted the estate. The complaint also named the other beneficiaries of the will, Executor, Mrs. Yohanek, and Mr. John G. Storey (together "Appellees") as defendants. On October 23, 2007, Appellees filed a motion to dismiss or for a more definite statement asserting lack of standing, lack of subject matter jurisdiction, and equitable estoppel. The trial court denied the Appellees' motion to dismiss in April 2008. Appellant, then, filed her first amended complaint on April 8, 2008, and the parties proceeded to discovery.

Executor filed his first interim accounting on September 26, 2007, to which Appellant took exception. On October 24, 2008, Executor filed another interim accounting; Appellant again filed an exception on October 27, 2008. On October 31, 2008, Executor filed his first petition for interim executor and attorney fees. Executor requested $50,000 in Executor fees and expenses and $118,407.77 in attorney's fees and

---

[1] Appellant filed the proceeding under the docket number of the estate.

expenses. Appellant opposed the award of fees and expenses, alleging that such award was improper given the ongoing litigation involving the parties. Appellant also pointed out that the value of the estate at that time was just a little over $50,000. On January 26, 2009, Executor's attorneys, the Glankler Brown Law Firm (hereinafter "Glankler Brown"), filed multiple affidavits in support of the award of attorney's fees and expenses through December 2008. The affidavits claimed that six attorneys and one paralegal had incurred over $135,000 dollars of fees and expenses while working on this case and that, considering the complexity and nature of the litigation, the fees were both reasonable and necessary. Appellant, again, opposed the petition for the fee award. On February 9, 2009, the trial court issued a written order on the petition for fees awarding Glankler Brown $62,740.00 in fees and $1,989.51 in expenses for services provided through September 2007. The trial court, however, found that "Executor's petition for fees for his services is premature."

On March 19, 2009, Executor filed a petition seeking instructions as to the allegedly "contrived" $652,000 gift made to Appellant. The trial court entered an order on May 1, 2009, that authorized Executor to amend the tax return and request a refund of the gift tax paid to the estate. On August 17, 2009, Appellees filed a second motion to dismiss Appellant's complaint and/or for partial summary judgment. Appellant responded to Appellees' motion in September 2009. The trial court entered an order granting in part and denying in part Appellees' motion to dismiss and/or for partial summary judgment. The trial court, thus,

> granted summary judgment in favor of [Executor] on claims of breach of fiduciary duty as [Decedent's] attorney in fact, conversion, and civil conspiracy, but declined to grant summary judgment in favor of [Executor] on the claim of undue influence; granted summary judgment in favor of Mrs. Yohanek on the claims of breach of fiduciary duty, undue influence, and civil conspiracy, but denied summary judgment in favor of Mrs. Yohanek on the claim of conversion as to charges made to Mrs. Storey's VISA credit card after Mrs. Storey's death; [and] (4) granted summary judgment in favor of Mr. John G. Storey on all claims for relief[.]

*In re Estate of Storey*, 2011 WL 2174901, at *8. The trial court's ruling effectively dismissed Appellant's complaint. Additionally, the trial court certified the order as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Appellant filed a motion to alter or amend the trial court's judgment on January 14, 2010, which was subsequently denied.

On December 29, 2009, Executor filed a second petition for interim fees. In this petition, Executor requested an additional $50,000 in interim executor fees and $151,885.31 in interim attorney's fees and expenses incurred from July 2006 to November 30, 2008. Appellant responded in opposition to Executor's motion for interim

fees on January 25, 2010. Executor and Executor's attorney filed another affidavit in support of the payment for additional fees on January 26, 2010. The Glankler Brown affidavits contained a detailed list of the services, time, and hourly rate of the attorneys and employees that worked on the case. Executor's affidavits included a description of his services along with the time spent completing each individual service. The trial court, however, entered an order on January 28, 2010, denying the award for interim fees as "premature . . . because [Appellant's] Motion to Alter or Amend was pending[.]" Following the denial of the motion to alter of amend, Executor filed a motion for the approval of fees on March 24, 2010, along with a supplement to the motion containing billing statements.[2] Appellant promptly responded in opposition. On June 11, 2010, the trial court issued a written order on the motion for the award of fees. In the order, the trial court determined that "Executor's conduct [was] not at the root of the litigation filed by [Appellant;]" therefore, the trial court ruled that Executor and Executor's counsel should be awarded fees from the estate. Thus, the trial court awarded Glankler Brown $169,652.56 in fees and expenses and awarded Executor approximately $15,000.00 in fees and expenses.

On May 31, 2011, the Court of Appeals reversed the trial court's dismissal of Appellant's undue influence, breach of fiduciary duty, and conversion claims, and the case was remanded to the trial court for further proceedings.[3] *See In re Estate of Storey*, 2011 WL 2174901, at *31.[4] After the Court of Appeals' decision, Appellant filed motions

---

[2] This motion for fees was not a petition for additional interim fees and expenses. Instead, after the trial court denied Appellant's motion to alter or amend, Executor renewed his December 29, 2009 petition for fees as the fee request was no longer premature.

[3] Ultimately, this Court affirmed in part, reversed in part, and remanded this case for further proceedings. This Court stated

> In sum, as to the Defendants' assertion of the statute of limitations as an affirmative defense, we affirm the trial court's refusal to toll the statute based on [Decedent's] alleged mental incompetency or the [Appellees] alleged fraudulent concealment; however, we reverse the trial court's ruling on the discovery rule. On the claims of undue influence, we reverse the grant of summary judgment in favor of Mrs. Yohanek and Mr. John G. Storey. On the claims of conversion, we reverse the grant of summary judgment in favor of [Executor], and affirm the grant of summary judgment in favor of Mr. John G. Storey. We affirm the trial court's dismissal of all claims based on civil conspiracy, albeit for different reasons. We reverse the grant of summary judgment in favor of [Executor] on the breach of fiduciary duty claim, and note that the claim against Mr. Yohanek based on breach of fiduciary duty in his capacity as executor of the estate is among the claims that are still pending before the trial court. Finally, we affirm the trial court's denial of the [Appellant's] motion to alter or amend and the denial of her motion to compel production of documents. The cause must be remanded for further proceedings.

> *In re Storey*, 2011 WL 2174901, at *30.

[4] Appellees' permission to appeal the decision of the Court of Appeals was later denied by the Tennessee Supreme Court.

for Executor to immediately distribute her legacy and to set aside the trial court's previous award of fees and expenses. In October 2011, the trial court ordered Executor to make a partial distribution to Appellant in the amount of $25,000.00 which would be applied as an advance against the Appellant's $150,000.00 legacy.

On January 19, 2012, Appellant filed a second amended complaint seeking to set aside transfers that were made as a result of undue influence, breach of fiduciary duty, and/or conversion. Appellees answered Appellant's second amended complaint in May 2013. More discovery and litigation ensued in the following months, which included motions in limine, responses, and additional annual accountings that were all opposed by Appellant.

The parties eventually proceeded to a jury trial that began on November 10, 2014 and spanned five days. At the close of Appellant's proof, Appellees moved for a directed verdict. The trial court granted Appellees' motion as to the claims against Executor for conversion; however, the court reserved a ruling on Appellant's remaining claims. After the close of Appellees' proof, Appellees renewed their motion for directed verdict for the remaining claims. The trial court granted Appellees' renewed motion for dismissal of Appellant's claims of undue influence against Mrs. Yohanek and Mr. Storey and against Executor for breach of fiduciary duty in his capacity as executor for Decedent's estate. The trial court denied Appellees' motion on the remaining claims for undue influence and breach of fiduciary duty under power of attorney against Executor, as well as the claim against Mrs. Yohanek for conversion. The jury rendered a written verdict on November 17, 2014, in favor of Appellees on all remaining issues. The trial court memorialized this verdict through a written order on December 5, 2014. Thus, the trial court concluded "the [Appellant] recover[s] nothing from [Appellees], that a judgment be entered in favor of [Appellees], and that the cause be, and hereby is, dismissed with prejudice."

On January 8, 2015, Executor filed his fourth petition for the approval of interim fees for himself and his attorneys, seeking $203,919.75 in attorney's fees and an additional $7,798.51 in expenses for the time period between May 2010 and December 2014. Executor additionally requested $61,287.50 in fees. Appellant again responded in opposition to the petition for fees. On February 10, 2015, the trial court ordered that Glankler Brown be awarded $150,000 as additional interim fees and expenses and that Executor be awarded $30,000 in interim fees. Following the trial court's order awarding interim attorney and executor fees, Appellant filed a Tennessee Rule of Appellate Procedure 10 application for extraordinary appeal to the Court of Appeals on March 13, 2015. This Court issued an order denying Appellant's extraordinary appeal on March 24, 2015. Then, on April 16, 2015, Appellant filed another Tennessee Rule of Appellate Procedure 10 application for extraordinary appeal to the Tennessee Supreme Court. The supreme court also denied Appellant's application on May 15, 2015.

On June 9, 2016, Executor filed his fifth, and final, petition for the approval of

fees, and Appellant filed an exception to this request on June 14, 2016. Executor's petition requested an additional $31,287.50 in Executor's fees and an additional $76,191.51 in attorney's fees and expenses. There was a hearing on the petition on August 16, 2016 in which a Glankler Brown attorney, George Nassar, was called to testify. Following the hearing, the trial court entered its final order on fees on September 28, 2016, awarding Glankler Brown an additional $37,802.00 in fees and denied Executor's request for an additional fee.[5]

On October 27, 2016, Appellant filed a motion for a new trial, to alter or amend the judgment, to consider additional evidence, and/or for relief from judgment following the trial court's September 28, 2016 order on fees. The motion requested that the court consider additional evidence to contradict the evidence presented by Glankler Brown at the August 16, 2016 hearing. Appellees responded in opposition to this motion on November 8, 2016, and the trial court denied Appellant's motion on December 2, 2016.

After the trial court's denial of Appellant's motion, Executor filed a final accounting with the trial court. The trial court entered an order approving the final accounting and ultimately closed the estate on March 3, 2017. From this final judgment, Appellant appeals.

---

[5] A summary of total fees is helpful:

Requested Attorney's Fees

| | | |
|---|---|---|
| • | October 31, 2008 | $118,407.77 |
| • | December 29, 2009 | $151,885.31 |
| • | January 8, 2015 | $211,718.26 |
| • | June 9, 2016 | $ 76,191.51 |
| | TOTAL: | $558,202.85 |

Trial Court's Attorney's Fees Award

| | | |
|---|---|---|
| • | February 9, 2009 | $64,729.51 |
| • | June 11, 2010 | $169,652.56 |
| • | February 10, 2015 | $150,000.00 |
| • | September 28, 2016 | $37,802.00 |
| | TOTAL: | $422,184.07 |

Requested Executor's Fees

| | | |
|---|---|---|
| • | October 31, 2008 | $50,000.00 |
| • | December 29, 2009 | $50,000.00 |
| • | January 8, 2015 | $61,287.50 |
| • | June 9, 2016 | $31,287.50 |
| | TOTAL: | $192,575.00 |

Trial Court's Executor's Fees Award

| | | |
|---|---|---|
| • | June 11, 2010 | $14,836.75 |
| • | February 10, 2015 | $30,000.00 |
| | TOTAL: | $44,836.75 |

## Issues Presented

Appellant presents six issues on appeal, which are taken from her brief and slightly restated:

(1) Did the trial court commit error by awarding attorney's fees to Glankler Brown, as attorneys for Appellees, that were excessive, unreasonable and/or unfair under the circumstances?

(2) Did the trial court commit error when it awarded attorney fees to Glankler Brown, as attorneys for Appellees without findings and conclusions and/or based solely upon "Lodestar Principles"?

(3) Did the trial court commit error when it did not consider the value of the Probate Assets which the Executor was administering, when determining "fair and reasonable" attorney fees under the circumstances?

(4) Did the trial court commit error when it awarded substantial Executor Fees, under the circumstances?

(5) Did the trial court commit error when it failed to consider the duties of the Executor and his attorneys to Appellant under the Last Will and Testament of Decedent, when it awarded fees to the Executor and Glankler Brown?

(6) Did the trial court commit error when it deprived Appellant of the right to receive her legacy provided by the Last Will and Testament from the Probate Estate, by awarding excessive, unreasonable, and/or unfair Executor and Attorney Fees that consumed the Probate Assets?

The Appellee presents two additional issues concerning the award of attorney's fees incurred in this appeal, which we have also slightly restated.

(1) Whether this is a frivolous appeal because no evidence exists in the record upon which Appellant can reasonably rely for this appeal?

(2) Whether Executor is entitled to an award of additional attorney's fees and expenses for successfully defending this appeal.

### Standard of Review

Tennessee courts have held that "a determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion." *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citing *Kline v. Eyrich*, 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester*, 304 S.W.3d 320, 332 (Tenn. Ct. App. 2005)). This Court will find that a trial court has abused its discretion only if the court has "applied incorrect legal standards, reached an illogical conclusion,

based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Id.* (citing *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)). The abuse of discretion standard, therefore, "does not allow the appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

## Discussion
### I.

As an initial matter, we must address the scope of this appeal. As evident from the above, all of the issues raised by Appellant in this appeal relate to the trial court's award of executor fees and attorney's fees in this case. In support for her argument that the trial court erred in its fee award, Appellant asserts that the trial court failed to take into account the fiduciary duty owed to the estate by Executor in reaching its decision regarding fees. Appellant's argument, however, apparently ignores the fact that Executor was found not to have breached his fiduciary duty or to have committed any wrongdoing in this matter after a jury trial on the merits. Although Appellant raised as an issue the trial court's alleged failure to consider the duties owed by Executor in making its fees decision, Appellant did not appeal the underlying determination that Executor in fact did not breach his fiduciary duty in this case.

It is well-settled law in Tennessee that this Court "may consider an issue waived where it is argued in the brief but not designated as an issue." *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. Dec. 9, 2011) (citing *Childress v. Union Realty Co.,* 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002)); *see also* *In re Tamera W.*, 515 S.W.3d 860, 873 (Tenn. Ct. App. 2016) ("This Court has repeatedly held that the failure to designate an argument as an issue in the party's appellate brief results in a waiver of the argument on appeal.")(citations omitted). Here, Appellant did not designate as an issue in this appeal the trial court's and jury's determination that Executor complied with all applicable duties in his representation of the estate. As such, any argument that the facts preponderate against the finding that Executor breached his fiduciary duty to the estate is waived. *Forbess*, 370 S.W.3d at 356. Of course, the reasonableness of the fee awarded by the trial court must be determined by the facts as whole, but we simply will not revisit the determination that Executor performed his duties in the underlying estate action appropriately in this case where Appellant chose not to designate that as an issue. *C.f In re Estate of Wallace*, 829 S.W.2d 696, 705 (Tenn. Ct. App. 1992) (holding that the executor's fiduciary duty "includes incurring only those expenses that are reasonably necessary for the proper administration of the estate").

### II.

- 8 -

Appellant next argues that Executor is not entitled to have his attorney's fees paid by the Estate asserting that the trial court did not follow the American Rule. We respectfully disagree. As pointed out by Appellant in her brief, Tennessee courts generally follow the American Rule, which requires litigants to pay their own attorney's fees unless a contract or statute provides otherwise. ***Taylor v. Fezell***, 158 S.W.3d 352, 359 (Tenn.2005). Despite Appellant's failure to include these statutes in her brief, we note that two statutes authorize the payment of attorney's fees in this situation. First, Tennessee Code Annotated section 30-2-317 states the types of claims that may be authorized to be paid by an estate and their priority. Among the claims allowed, the first in priority is "[c]osts of administration, including, but not limited to, . . . reasonable compensation to the personal representative and the personal representative's counsel[.]" Likewise, Tennessee Code Annotated section 30-2-606 provides that executors are entitled to "a reasonable compensation for services[.]" Based upon these statutes, we have previously held that "[e]xpenses for legal and accounting services that benefit or protect the estate are among the expenses for which payment is appropriate." ***In re Estate of Wallace***, 829 S.W.2d 696, 701 (Tenn. Ct. App. 1992) (***Leaver v. McBride***, 506 S.W.2d 141, 145 (Tenn. 1974)). As we explained

> Executors have the authority to retain counsel to assist them in administering an estate. When they retain counsel, they are personally liable for the fees until a court determines that the services were required and that the fee was reasonable. If a court approves the fee, the executor may charge it back against the estate as one of the costs of administration under Tenn. Code Ann. § 30-2-606. . . .

***In re Estate of Wallace***, 829 S.W.2d at 703 (citations omitted).

Not all expenses incurred by an executor, however, may be charged to an estate. Rather, to determine whether attorney's fees incurred by the executor may be charged to the estate, this Court has stated that we must consider whether "'the executor's conduct is at the root of the litigation.'" ***In re Estate of Wallace***, 829 S.W.2d at 703. In making this determination, we are guided by the following parameters: "when an executor is charged with breach of its fiduciary duties or when its accounting is challenged, it is the outcome of the proceedings that determines whether the executor's legal expenses incurred in defending against the challenge should be assessed against the estate." ***Id.*** at 704 (citing ***In re Estate of Birnbaum***, 112 A.D.2d 778, 492 N.Y.S.2d 275, 277 (1985)).[6] As such, if the executor "successfully defends its conduct, its legal expenses may be charged against the estate." ***In re Estate of Wallace***, 829 S.W.2d at 704 (citations omitted). If, however,

---

[6] Thus, Appellant's reliance on ***In re Estate of Greenamyre***, 219 S.W.3d 877 (Tenn. Ct. App. 2005), which held that payment of attorney's fees by an estate **in a will contest** "does not necessarily hinge on the success of the party's claims[,]" is misplaced, as this case does not involve a will contest. ***Id.*** at 886.

the executor does not "prevail completely, or where it is partially to blame for bringing about unnecessary litigation, the executor rather than the estate should be responsible for its legal expenses." *Id.* (citations omitted).

As noted above, Appellant does not dispute the underlying determination that Executor in fact did not breach his fiduciary duty in this case. As such, there can be no dispute in this case that Executor completely prevailed against Appellant in her claim that he breached his fiduciary duty or otherwise acted inappropriately in this case.[7] *See **In re Estate of Darken***, No. M2016-00711-COA-R3-CV, 2016 WL 7378806, at *13 (Tenn. Ct. App. Dec. 20, 2016) (holding that where an executrix successfully defended a claim of breach of fiduciary duty, she was entitled to have her legal expenses paid by the estate). Finally, we note that in its September 28, 2016 order on fees, the trial court specifically found that Appellant's actions, rather than the actions of Executor were the root of the litigation in this case, finding "that the exorbitant costs and fees in this case are due to the actions of [Appellant]."[8] Nothing in Appellant's argument illustrates that the trial court erred in this finding.

Appellant asserts, however, that the totality of the fees in this case were not for the benefit of the estate. "In order for attorney's fees to be allowed as an administrative expense, they must be shown to be required, and the services provided must inure to the benefit of the entire estate, as opposed to one or more of the interested parties." *In re Estate of Wallace*, 829 S.W.2d at 703 (citation omitted). Here, the trial court essentially found that all of the effort expended by the attorneys was for the benefit of the estate because the interests of the parties were "the same":

> In this case, the Executor hired counsel to defend the estate as the personal representative and individually. [Appellant's] other two siblings and the

---

[7] We note that Appellant does not assert in her appellate brief that the trial court's decision not to award Executor all of his requested fees has any effect on whether he "prevail[ed] completely" in his defense against Appellants' attacks. As such, any argument to that effect is waived. *C.f. In re Estate of Wallace*, 829 S.W.2d at 704 (reducing the fee awarded for the executor's legal expenses but nevertheless allowing those fees to be charged to the estate).

[8] The trial court's ruling on this issue was expansive:

> Upon reviewing the file, the pleadings, affidavits, the memoranda, the sworn testimony, and the statements of counsel, this Court finds that the exorbitant costs and fees in this case are due to the actions of [Appellant]. The Executor had to respond to all of [Appellant's] pleadings and had to have counsel to do so. Even after [Appellant's] loss in the jury trial, she continued to file pleadings against the estate, which had to be answered, and in all instances, had to be tried. Even the years of accounting filed by the Executor were excepted to by [Appellant] and required a contested hearing. The years of correspondence from Glankler Brown to the several counsel of [Appellant] show a pattern of good faith and trying to settle the case, but . . . "[Appellant] want[ed] her day in Court." [Appellant] had her day in Court, but the litigation continued.

Executor, individually, were brought into this action. It does appear that all of their interests were the same as the Executor . . . .[9]

Although Appellant asserts in her brief that the "bulk of the fees did not benefit the estate," Appellant's argument fails to elaborate on this assertion. Rather, the substance of Appellant's argument is as follows:

> Appellant has directed this Court above to pertinent citations in the record that confirm that the Trial Court award attorney fees to Mr. Yohanek's attorneys for work that they performed in the representation of Mr. Yohanek individually, Mrs. Yohanek and Mr. Storey, in the defense of Mrs. Huber's derivative action that sought to bring back estate assets[.[10]]

No actual citations to the record follow this assertion.

With regard to this issue and indeed with regard to many of the contentions in her brief, Appellant appears to conflate the purposes of the facts and arguments sections of appellate briefs. Under Rule 27 of the Tennessee Rules of Appellate Procedure, appellants are directed to file briefs containing separate sections for facts and arguments. *See* Tenn. R. 27(a) (noting that the appellant's brief "shall" contain these sections "under appropriate headings). The argument section must contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on[.]" Tenn. R. 27(a)(7)(A). This Court has previously held that it was inappropriate for a litigant to submit a brief where the statement of facts was "interlaced and intertwined" with arguments of counsel. ***Freiden v. Alabaster***, No. 86186–2, 1990 WL 14562 (Tenn. Ct. App. Feb. 21, 1990), *perm. app. denied* (Tenn. June 11, 1990) (citing Tenn. R. App. P. 27) ("[T]his Court is of the opinion that where argument of counsel is so repeatedly intertwined with what might be considered statements of fact, it is not the responsibility of the Appellate Court to read such a brief so as to ferret out the facts from the argumentative statements in order to eliminate improperly included argument."). The same is true in this case. Appellant's statement of the facts and statement of the case combines to total twenty-four pages. Appellant's argument, however, totals only four pages, not including the standard of review. As noted above, Appellant clearly attempts

---

[9] At the final fee hearing, Attorney Nassar testified with regard to this issue as follows:

> [Executor] in his capacity as executor was sued for everything in the world. And their [i.e., Mr. Storey's and Mrs. Yohanek's] suits were just kind of rode the coat tails in the sense that we had to defend him. And the defense of him ended up being a defense of them. But we made no extra effort on their behalf . . . .

[10] In this section of her brief, Appellant also asserts that the fees were redundant and excessive. Those contentions are addressed, *infra*.

to avoid sufficiently arguing its contentions in the argument section of her brief by asking this Court to comb through her brief to discern the basis of her allegations. Indeed, despite the contention above that Appellant "has directed" this Court to appropriate citations, Appellant completely fails to point to the page in her brief where these elusive citations may be found, or more importantly, include the appropriate citations in the argument section of her brief, as mandated by Rule 27(a)(7)(A).

Tennessee courts have repeatedly held that where a party raises an issue, but fails to argue that issue in the body of its appellate brief, "fails to develop an argument in support of [its] contention[,] or merely constructs a  skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). Indeed, it is simply "not the role of the courts, trial or appellate, to . . . construct a litigant's case or arguments for him or her[.]" *Id.*; *see also Nunn v. Tennessee Dep't of Correction*, No. M2016-01518-COA-R3-CV, 2017 WL 4776748, at *31 (Tenn. Ct. App. Oct. 23, 2017) (quoting *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009) (Koch, J., concurring in part and dissenting in part) ("Parties must thoroughly brief the issues they expect the appellate court to consider.")). Accordingly, any assertion that the trial court erred in finding that all of the attorney's fees inured to the benefit of the estate despite the attorneys also representing the individual parties is waived. Thus, the trial court did not err in holding that the fees of Executor were properly paid by the estate so long as the fees were reasonable and necessary. *See In re Estate of Darken*, No. M2016-00711-COA-R3-CV, 2016 WL 7378806, at *13 (Tenn. Ct. App. Dec. 20, 2016) (quoting *In re Estate of Wallace*, 829 S.W.2d at 703) ("'[T]o use estate funds to pay for the legal fees in [a] case, we must examine the record to determine whether . . . the amount of the requested fee is reasonable.'").    Consequently, we turn to analyze that issue.

### III.

As previously discussed, an executor of an estate is entitled to (1) reasonable compensation for his or her services and (2) payment for reasonable expenses that were incurred in good faith and for the benefit of the estate. *In re Estate of Ladd*, 247 S.W.3d 628, 639 (Tenn. Ct. App. 2007) (citing *In re Estate of Wallace*, 829 S.W.2d 696, 700–01 (Tenn. Ct. App. 1992)); *see also* Tenn. Code Ann. § 30-2-606 (allowing reasonable compensation).  As such, "[e]xpenses for legal . . . services that benefit or protect the estate are among the expenses for which payment is appropriate." *In re Estate of Wallace*, 829 S.W.2d at 701 (citing *Leaver v. McBride,* 506 S.W.2d 141, 145 (Tenn. 1974) (attorney's fees); *McAdoo v. Dickson,* 175 Tenn. 598, 602, 136 S.W.2d 518, 519 (Tenn. 1940) (attorney's fees)).

Fees and expenses that are charged to the estate must, however, be reasonable, necessary, and proper. *In re Estate of Ladd*, 247 S.W.3d at 701 (citing *In re Estate of Cuneo*, 63 Tenn. App. 507, 475 S.W.2d 672, 676 (Tenn. Ct. App. 1971)). "One seeking

- 12 -

attorney's fees has the burden of proving what constitutes a reasonable fee and should be in a position to tender the necessary proof." **Wright v. Wright**, No. M2007-00378-COA-R3-CV, 2007 WL 4340871, at *5 (Tenn. Ct. App. Dec. 12, 2007) (citing **Wilson Mgmt. Co. v. Star Distribs. Co.**, 745 S.W.2d 870, 873 (Tenn.1988)). Generally, the proponent may meet its burden "'by presenting the affidavit of the lawyer who performed the work.'" **Wright**, 2007 WL 4340871, at *5 (quoting **Hosier v. Crye-Leike Commercial, Inc.**, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001)). The party opposing the fees should then be given the opportunity to rebut that proof. *See* **Hosier**, 2001 WL 799740, at *6 (citing **Kahn v. Kahn**, 756 S.W.2d 685, 696 (Tenn. 1988)) ("Parties opposing a request for attorney's fees should be afforded a fair opportunity to cross-examine the requesting party's lawyer or to present proof of its own."). "The record must contain some evidence showing that an award of attorney's fees is unreasonable before a reversal of the fees is justified." **Eberbach v. Eberbach**, No. M2013-02852-COA-R3-CV, 2014 WL 7366904, at *6 (Tenn. Ct. App. Dec. 23, 2014) (citing **Kline v. Eyrich**, 69 S.W.3d 197, 210 (Tenn. 2002)).

Here, Executor submitted multiple affidavits in support of his fees and expenses, all of which alleged that the fees were necessary and reasonable.[11]   Additionally, Appellant does not argue on appeal that she was given an inadequate opportunity to examine or contest the fees.  Rather, she simply argues the fees were unreasonable under the circumstances.

We begin our analysis with the fees awarded to Executor in this case. In his petitions for the approval of interim fees, Executor petitioned the court for $192,575.00. The trial court, however, found it reasonable to award Executor only $44,836.75.  In each order awarding fees, the trial court specifically found that the services were necessary, and the fees and expenses to be reasonable.  Further, the trial court awarded Executor less than one-quarter of the amount of fees requested, specifically stating in its final fee award "[t]his [c]ourt finds that it cannot award any additional fees to the Executor.  The Executor was well represented by Glankler Brown and although he certainly made every appearance in Court, additional fees cannot be justified under the circumstances." We note that although Appellant raises the trial court's award of fees to Executor as issues on appeal, Appellant's argument largely ignores Executor's fees in favor of focusing on the attorney's fees awarded in this case. Based upon the record and Appellant's brief, we discern no abuse of discretion in the trial court's award of fees to Executor in the amount of $44,836.75.  We note the sheer length of the case-at-bar.  Executor has spent many hours over the last eleven years responding to litigation initiated by Appellant.  In addition to defending himself in this litigation, Executor also performed his duties as the executor of the estate.  Executor submitted multiple petitions and affidavits outlining the services he provided administering the estate.  Under these circumstances, we cannot conclude that the trial court awarded excessive fees to Executor, and thus, did not abuse

---

[11] In addition, Attorney Nassar submitted sworn testimony regarding fees at the final fee hearing.

- 13 -

its discretion in its award of fees and expenses.

We next consider the award of attorney's fees in this case. The Rules of the Tennessee Supreme Court provide factors that courts should consider when determining the reasonableness of attorney's fees. It provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;
(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing.

Tenn. Sup.Ct. R. 8, RPC 1.5. Tennessee has not adopted a "'fixed mathematical rule' for determining what a reasonable fee is." *Wright ex rel. Wright*, 337 S.W.3d at 176 (quoting *Killingsworth v. Ted Russell Ford, Inc.*, 104 S.W.3d 530, 534 (Tenn. Ct. App. 2002)). Rather, "'the reasonableness of the fee must depend upon the particular circumstances of the individual case.'" *Wright ex rel. Wright,* 337 S.W.3d at 181 (quoting *White v. McBride*, 37 S.W.2d 796, 800 (Tenn. 1996)). The trial court's determination of reasonable attorney's fees is "'a subjective judgment based on evidence and the experience of the trier of facts[.]'" *In re Estate of Ladd*, 247 S.W.3d at 701 (quoting *United Med. Corp of Tenn., Inc. v. Hohenwald Bank & Trust Co.*, 703 S.W.2d 133, 137 (Tenn. 1986); *see also* **Hosier**, 2001 WL 799740, at *6 ("Trial courts are perfectly capable of applying these factors and deciding whether a requested fee is reasonable based on their knowledge of the case and their perception of the value of the services performed."). As previously noted, once a trial court has made a determination

- 14 -

regarding a fee request, we review that decision only for an abuse of discretion. *See Wright ex rel. Wright,* 337 S.W.3d at 176.

Here, Appellant argues that the attorney's fees submitted were redundant, unreasonable, and excessive and that the trial court improperly relied on the Lodestar standard. We begin with Appellant's contention that the fees charged and awarded were redundant. In her brief, Appellant states that "itemized billings for the first three applications for attorney's fees were substantially redundant." "The burden of establishing [an] abuse of discretion is on the party seeking to overturn the trial court's ruling on appeal." *Summers v. Cherokee Children & Family Servs., Inc.*, 112 S.W.3d 486, 530 (Tenn. Ct. App. 2002) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 659 (Tenn. 1996)); *see also State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000) ("A party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden."). As such, Appellant bears the burden of establishing that the trial court abused its discretion by awarding fees that were redundant. In support of her assertion that the fees were "substantially redundant." Appellant points only to the affidavits filed by attorneys in support of the fee award, as well as a motion to set aside the award filed in the trial court.[12] At no point in her argument on this issue does Appellant cite a single specific instance of a redundant billing; indeed, with regard to this single sentence contention, Appellant fails to cite to the actual itemized billings to show alleged redundancies.[13] "Judges are not like pigs, hunting for truffles buried in briefs." *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *9 (Tenn. Ct. App. Feb. 4, 2015) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). "It is not the function of the appellate court to research and construct the parties' arguments." *Id.* (quoting *Dunkel*, 927 F.2d at 956) (citations omitted). Issues are not properly raised on appeal where a party's brief merely invites "this court to go on a hunting expedition without a guide or a map." *Berg v. Berg*, No. M2013-00211-COA-R3-CV, 2014 WL 2931954, at *3 (Tenn. Ct. App. June 25, 2014) ("[I]t is not this court's responsibility to comb through the record searching for error."). Thus, "it is not incumbent upon us to comb through the record in search of support for her claims[.]" *Kyle v. Kyle*, No. W2004-01221-COA-R3-CV, 2005 WL 326892, at *6 (Tenn. Ct. App. Feb. 10, 2005). Given the voluminous record in this case, we decline

---

[12] The single page of Appellant's motion cited in the brief does not mention redundancy, nor does it take issue with any specific charges. Rather, the specific page of the motion cited asks the trial court to make an independent evaluation of the fees requested while taking into account that such an award would encompass substantially all of the proceeds of the Estate, arguing that such a result is inequitable.

[13] In the statement of facts section of her brief, Appellant does appear to assert that Glanker Brown's billings were not sufficiently definite because they included generic descriptions such as "work on estate matter" or "work on estate tax return. As previously discussed, however, we are not obligated to scour Appellant's brief to find support for the assertions in her argument. *See* Tenn. R. 27(a)(7)(A) (requiring that parties include citations to the record in the argument sections of their briefs). In addition, Appellant cites no law to suggest that generic billings such as these are entirely inappropriate nor does she specify that these are the billings of which she complains of redundancies.

- 15 -

Appellant's invitation to find error where such errors were not specifically detailed in the argument section of Appellant's brief; all issues regarding redundant charges are therefore waived.

Appellant next asserts that the trial court erred in improperly relying on the Lodestar method of determining the reasonableness of attorney's fees. "In the lodestar calculation, the court multiplies the number of hours that the attorney has reasonably expended on the case times a reasonable or customary hourly rate." ***Wright ex rel. Wright***, 337 S.W.3d at 179 (citing ***United Med. Corp of Tenn., Inc. v. Hohenwald Bank and Trust Co.***, 703 S.W.2d 133, 137 (Tenn. 1986)). The court in ***Wright***, however, rejected sole reliance on this calculation:

> Ultimately, we decline to require that trial courts rely solely or even primarily on the lodestar computation . . . . [O]ur existing multi-factor analysis already includes the time and labor involved in the case and the fee customarily charged in the locality. We decline to make those factors the paramount or exclusive considerations because RPC 1.5(a) articulates a number of other factors that are also important in determining a reasonable attorney fee.

***Wright ex rel. Wright***, 337 S.W.3d at 180. Rather, the court concluded that "[r]egardless of the approach used, the determination of what constitutes a reasonable fee is still a subjective judgment based on evidence and the experience of the trier of facts and the reasonableness of the fee must depend upon the particular circumstances of the individual case." ***Id.*** at 180−81 (internal citations omitted).

We, however, cannot agree that the trial court gave improper weight to the Lodestar standard. The trial court entered four orders on attorney's fees over the course of this case. In sum, each order stated that that Glankler Brown should be compensated for the services they provided for the estate. Specifically, in its June 11, 2010 and February 10, 2015 orders, the trial court found both Executor's fees and attorneys' fees to be "reasonable and necessary" after considering the parties' arguments, the documents presented as evidence, and the record as a whole. In multiple orders, the trial court considered the fact that that the extensive litigation in this case was due to the Appellant's conduct. In its June 11, 2011 award on fees the trial court specifically stated that the "Executor's conduct [was] not at the root of the litigation filed by [Appellant]." Furthermore, in its September 28, 2016 order on fees, the trial court specifically found that "the exorbitant costs and fees in this case are due to the actions of [Appellant]."

The final order on attorney's fees also contained findings that illustrate that the hours worked and the fees charged were not the sole considerations for the award. In the final order, the trial court specifically considered the specific factors of Supreme Court Rule 8, RPC 1.5, as discussed in more detail *infra*. First, despite Appellant's assertion

otherwise, the trial court expressly stated that it considered the gross value of the estate.[14] The trial court additionally discussed Glanker Brown's attempted settlement negotiations with Appellant as evidence that Glanckler Brown was not attempting "to inflate their fee or prolong other services[,]" Finally, the trial court noted Appellant's failure to present evidence to refute sworn testimony and documents produced by Glanker Brown's attorneys. With regard to that evidence, the trial judge explained that it "[gave] great weight to its decisions on fees, based on the actions of [Appellant.]" Accordingly, the trial court's order makes clear that it did not improperly rely on the Lodestar standard in determining fees.

Next, we will discuss the Appellant's argument that the fees awarded were excessive. We agree that the trial court awarded a large amount of attorney's and executor's fees in this case. Glanker Brown petitioned the trial court for $558,202.51. The trial court, however, awarded Glankler Brown $422,184.07.[15] In its final order on fees, the trial court properly considered RPC 1.5 in its fee determination. Specifically the trial court found that Glankler Brown did "produce positive results for their client." *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(4) (directing the trial court to consider the result obtained). There is no dispute that Executor ultimately prevailed completely in defending against the multiple claims leveled by Appellant. Given that Appellant has not appealed these findings, we must conclude that Executor performed his duties appropriately in this case, both with regard to his own defense as well as in the administration of the Estate. The trial court further found that "it is clear that there has been a great deal of time and labor involved [in litigating this case], and although the issues were not novel "[t]here was a need for appropriate skill to handle the issues." *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(1) (directing the trial court to consider the time and labor required, the novelty of the issues, and the skill necessary to perform the legal service). Here, the parties have spent numerous hours conducting discovery, drafting and arguing motions, preparing appeals materials, and preparing for a jury trial—all "due to the actions of the [Appellant]" according to the trial court. While we agree that the issues in this Estate were not overly complex, we can find no abuse of discretion in the trial court's determination regarding this factor where the trial court repeatedly found that the issues in this case were muddied by Appellant's repeated and ultimately unfounded accusations against Executor.

---

[14] Despite this fact, Appellant argues that the trial court failed to consider the value of the probate assets when determining the award of fees. Here, the trial court specifically declined to award the total amount of fees requested by Executor "in light of the assets currently held by the Estate" in its February 15, 2015 order. Further, the trial court stated "[t]his [c]ourt is reluctant to award fees that are in excess of the actual Probate estate, but in this case, the actions of one beneficiary have required the attorney for the [Executor] to respond." Thus, the trial court clearly considered the value of the probate assets when determining the fee awards.

[15] We note that the trial court awarded the full amount of requested fees only once in its four orders on attorney's fees awards.

The trial court also found that "[t]he hourly rate charged by Glankler Brown [was] within the range for attorneys in the locality[,]" there is no proof of fixed or contingent fees or advertisement,"[a]ll the attorneys in this case have excellent reputations in the community[,]"and the trial court was "not aware of a written contract with the client." *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(3) (directing the trial court to consider the fee customarily charged in the locality for the service); (7) (directing the trial court to consider the experience and reputation of the attorney); (8) (directing the trial court to consider whether the fee is fixed or contingent); (10) (directing the trial court to consider whether the contract was in writing). Again, Appellant points to no evidence presented in the trial court to suggest that the hourly fee charged by Glankler Brown was inflated beyond the customary amount or that the ultimate attorney's fee awarded was unreasonable as a result. *See **Eberbach***, 2014 WL 7366904, at \*6 (Tenn. Ct. App. Dec. 23, 2014) (stating that having been given an opportunity to oppose fees, the party opposing fees must point to evidence that the fees are unreasonable to justify reversal). Likewise, the evidence in the record does not undermine the trial court's determination based upon its experience that the attorney's in this case had excellent reputations in the community and were therefore well-equipped to handle this matter.

The trial court also considered the value of the estate when determining fee awards. *See* Tenn. Sup. Ct. R. 8, RPC 1.5(a)(4) (directing the trial court to consider the amount involved). In its February 10, 2015 order on fees, the trial court, "in light of the assets currently held by the Estate[,]" did not award the full amount of attorney's fees requested by Glankler Brown. Further, in its final order, the trial court highlighted that although the gross value of the estate was over $2,000,000.00, the probate estate assets totaled less than $400,000.00. The trial court ultimately awarded attorney's fees in excess of the total probate estate assets explaining that although "[the trial court] is reluctant to award fees that are in excess of the actual Probate estate, but in the case, the actions of [Appellant] have required the attorney for [Executor] to respond." We cannot conclude that Appellant has shown an abuse of discretion as to this factor. Here, the trial court specifically found that much of the fees in this case were necessitated by Appellant's own unsuccessful effort to oust Executor, despite the clear intention of Decedent to name Mr. Yohanek as such in her will. The trial court was clearly concerned that the award of fees would consume the Estate but determined that this result was appropriate given the effort expended by Executor and his attorneys over the more than decade they had been responding to Appellant's accusations. Clearly, Tennessee Code Annotated section 30-2-317 provides that costs of administration have priority over other types of claims to the Estate.[16] Likewise, we conclude that although the requested attorney's fees in this case ultimately consumed the entire probate estate, Executor did not thereby breach his fiduciary duty, given the trial court's unequivocal determination that such was necessary

---

[16] At the final fee hearing, Attorney Nassar testified that should the trial court award fees in excess of the probate assets, Executor would institute proceedings to recoup assets for the Estate. Those proceedings, if any, are not at issue in this appeal. In any event, the estate was closed on March 3, 2017.

due to Appellant's litigation strategy in this case. *See Wallace*, 829 S.W.2d at 705 (Tenn. Ct. App. 1992) (holding that the executors have a duty to only incur necessary fees on behalf of the estate).

Lastly, there can be no dispute that this relatively ordinary Estate action has lasted over a decade, much of which is attributable to Appellant's unsuccessful claims. Tenn. Sup. Ct. R. 8, RPC 1.5(a)(1) (directing the trial court to consider the labor required); (6) (directing the trial court to consider the length of the relationship with the client). Executor and Glanker Brown both submitted multiple affidavits outlining the exact hours and services required in defending against Appellant's claims, showing that hundreds of hours were expended in this case. The testimony presented at the fee hearing indicates that Appellant initially contested the admission of the will and did not stop contesting matters in this case even after all of her claims were dismissed at trial.[17] Mr. Nassar also testified that the parties attempted settlement but that all offers were "rebuffed" by Appellant, and the trial court clearly credited Mr. Nassar's testimony regarding these events.[18] According to Attorney Nassar, Glankler Brown recognized the fees were significant and made efforts to be "judicious" but Appellant's litigiousness necessitated response. Although presented with an opportunity to rebut the recovery of these fees, Appellant called no witnesses and points to no evidence adduced at this hearing to support her contention that the fees awarded were unreasonable. *Eberbach*, 2014 WL 7366904, at *6. Again, we recognize that the trial court awarded a very large amount of fees to Glanker Brown, and that "we almost certainly would have awarded a lesser amount if we were reviewing [Glankler Brown's] fee request de novo." *Wright ex. rel Wright,* 337 S.W.3d at 188. We, however, cannot substitute our judgment for that of the trial court absent an illogical or clearly erroneous judgment, or one that causes an injustice, *see id.*, which has not been shown to be the case. Accordingly, we conclude that the trial court did not abuse its discretion in awarding Glanker Brown's fees, and that the fees awarded are not excessive.

## IV.

Finally, Executor raises two arguments regarding the payment of attorney's fees on appeal. First, Executor asserts that Appellant should be required to pay his attorney's fees incurred in defending this allegedly frivolous appeal under Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon

---

[17] There are no pleadings regarding this issue in the record; however, Mr. Nasser testified to this fact at the fee hearing.

[18] Attorney Nassar's testimony was supported by multiple letters sent to Appellant and her counsel.

- 19 -

motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

In the alternative, Executor asserts that this Court should award Executor his attorney's fees as costs incurred in the administration of the Estate and order that the fees be paid by the Estate. Although Appellant's brief lacked specificity in many areas, we do not conclude that this appeal was frivolous or taken solely for delay. Additionally, we note that substantial attorney's fees have been awarded from the Estate, with the result that the Estate was exhausted. As such, we exercise our discretion to deny an award of attorney's fees on appeal. *See Andrews v. Andrews*, 334 S.W.3d 321, 340 (Tenn. Ct. App. 2010) ("The decision to award attorney fees incurred on appeal lies solely within the discretion of the appellate court.") (citing *Moses v. Moses*, No. E2008-00257-COA-R3-CV, 2009 WL 838105, at \*10 (Tenn. Ct. App. Mar. 31, 2009) (citations omitted)).

## Conclusion

The judgment of the Shelby County Probate Court is affirmed and this cause is remanded for all further proceedings as are necessary and consistent with this Opinion. The costs of this appeal are taxed to Appellant, Peggie Sherill Huber, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE